# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2021

Lyle W. Cayce
Clerk

No. 21-10108

MARK A. TICER, *doing business as* LAW OFFICE OF MARK A. TICER,

*Plaintiff—Appellant*,

*versus*

IMPERIUM INSURANCE COMPANY, IRONSHORE INDEMNITY
INCORPORATED

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-481

Before HIGGINBOTHAM, STEWART, and WILSON, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

This case addresses whether a non-diverse defendant, Imperium Insurance Company (Imperium), was improperly joined in an insurance coverage dispute. The district court properly considered the Imperium insurance policy in a summary inquiry. Because there is no reasonable cause of action against Imperium, we affirm the district court. However, the Law Office of Mark A. Ticer's (Ticer) claims against Imperium should not have

No. 21-10108

been dismissed with prejudice.[1] We vacate the district court's dismissal and remand for dismissal without prejudice.

## I.

The convoluted procedural history of this case must be detangled to understand this appeal. To begin, the Law Office of Mark A. Ticer was sued twice by its former clients, Kenneth L. Reed, Reed Migraine Centers of Texas, PLLC and Neuro Stim Technologies, LLC. The first lawsuit was in 2014; the second one was in 2018. Both suits stem from the same underlying fee dispute.

In 2018, Ticer sued Ironshore Indemnity, Inc. (Ironshore), an insurance company, in Texas state court for defense and breach of contract regarding the second Reed suit. Ironshore is a Minnesota corporation with its principal place of business in New York. Ironshore subsequently removed the suit to federal court. The suit was dismissed for Ticer's failure to pursue mediation before filing suit as required by the insurance policy.

Then, in 2019, Ticer again sued Ironshore in Texas state court regarding the same insurance coverage dispute and demanded defense and indemnity for the fee dispute allegations. This time, Ticer also sued Imperium, a Texas-based insurance company, for failing to defend and indemnify it in the 2018 lawsuit. Ironshore again removed the lawsuit to federal court, alleging that Imperium was improperly joined and the federal court therefore properly had diversity jurisdiction.[2] Ticer timely filed for remand to state court, asserting that there was no misjoinder. After briefing

---

[1] While Appellant in his briefing refers to his firm as "LOMAT," throughout all of its various orders, the district court has used "Ticer." We will continue to refer to "Ticer" in our opinion.

[2] The amount in controversy has never been at issue in this case.

on this issue, Ironshore sought leave to file a copy of the Imperium Insurance Policy. The district court granted Ironshore leave to file the Imperium policy and to rebrief its response to Ticer's motion for remand. On January 15, 2020, the district court denied Ticer's motion for remand, concluding that Ticer had procedurally misjoined Imperium.[3] The district court severed Ticer's claims against Imperium and remanded them back to state court.

In response, Ticer filed an expedited motion for reconsideration, arguing that there was no procedural misjoinder and that the district court erred in relying on an improper joinder analysis. The district court granted Ticer's motion in part and vacated its denial of Ticer's motion to remand. The district court then concluded that although its prior order had rested on procedural misjoinder, the proper ground for deciding improper joinder in this case was "fraudulent joinder."[4] As such, the district court determined that it was necessary to "pierce the pleadings and conduct a summary inquiry." The district court requested that the parties provide a joint report detailing discovery needed.

In response, Ticer objected to the district court's new order and opinion, arguing that any summary inquiry on the Imperium insurance policy would amount to pre-trying the merits of the case.[5] Ticer again objected to summary inquiry in the joint status report. On November 23, 2020, the district court ordered an exchange of documents identified by Ironshore and

---

[3] The district court held, "Ticer's alleged right to relief against Ironshore and alleged right to relief against Imperium do not – as Texas requires for proper joinder – arise out of the same transaction, occurrence, or series of transactions or occurrences."

[4] Fraudulent joinder is typically referred to as improper joinder in this circuit.

[5] Ticer followed this objection with an appeal to this Court. We denied his appeal for want of appellate jurisdiction.

No. 21-10108

Imperium in the joint status report, including the 2017 Imperium insurance policy.

On February 4, 2021, the district court issued its order without a hearing, denying Ticer's motion to strike and motion for remand. The district court found that due to an exclusion in the Imperium policy, Ticer's claims against Imperium were barred and Ticer would not be able to establish a cause of action against Imperium in state court. The district court dismissed Ticer's claims against Imperium with prejudice. Ticer timely appealed to this Court.

## II.

"We review *de novo* the district court's 'determination that a party is improperly joined and [its] denial of a motion for remand.'"[6]

## III.

It is undisputed that Ticer and Imperium are not diverse, while Ticer and Ironshore are diverse. Therefore, removal jurisdiction is only proper if Imperium was improperly joined to the suit. 28 U.S.C. § 1441(a) authorizes the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," but subsection (b) specifies that suits not arising under federal law are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[7] Removal statutes "are to be

---

[6] *Davidson v. Georgia-Pacific, LLC,* 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009)).

[7] *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc) (quoting 28 U.S.C § 1441(b)) (emphasis in original).

construed strictly against removal and for remand" to state court.[8] The "focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."[9] The burden of proving that complete diversity exists rests on the party invoking the court's diversity jurisdiction; the defendant thus has the "heavy burden" of establishing that removal was proper.[10] Here, the burden is on Ironshore.

This case concerns two potential types of misjoinder: procedural misjoinder and improper joinder. Procedural misjoinder is the joining of two or more defendants or plaintiffs or claims in a lawsuit where there is no common transaction, occurrence, or series of transactions or occurrences and no question of law or fact common to all of them that will arise in the lawsuit which was removed.[11] Improper joinder can be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[12] Only the latter is at issue here. We first ask whether it was improper for the district court to consider improper joinder and whether the

---

[8] *Hicks*, 12 F.4th at 515 (quoting *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996)).

[9] *Id.* (quoting *Smallwood*, 385 F.3d at 573); *see also McDonal v. Abbott Labs*, 408 F.3d 177, 183–84 (5th Cir. 2005).

[10] *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988); *Smallwood*, 385 F.3d at 574.

[11] This circuit has recently declined to adopt procedural misjoinder (also called fraudulent misjoinder) as adopted by the Eleventh Circuit in *Tapscott. Williams v. Homeland Ins. Co. of New York*, No. 20-30196, 2021 WL 5577020, at *6 (5th Cir. Nov. 30, 2021); *see Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

[12] *Smallwood*, 385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).

district court abused its discretion in holding a summary inquiry and then turn to the district court's finding that Imperium was improperly joined.

## A.

Ticer contends that the district court abused its discretion in finding improper rather than procedural misjoinder. However, this Court has foreclosed procedural misjoinder. "Our court has gone en banc *twice* on precisely what is needed to remove a case from state to federal court on the basis of diversity jurisdiction notwithstanding a lack of complete diversity between the parties. . . . Our case law emphasizes substantive viability—not procedural questions like party joinder."[13] And 28 U.S.C. §1446(a) requires that the notice of removal provide a "short and plain statement of the grounds for removal," which "shall be so construed as to do substantial justice."[14] Generally, a defendant must adequately inform the plaintiff of the grounds for removal, but a "detailed grounds setting forth basis for removal" is not necessary.[15] Ironshore raised both procedural misjoinder and improper joinder in its notice of removal. Ironshore cited *Delphis, L.P. v. NFLP Holdings, Ltd.*, which addressed both procedural misjoinder and improper joinder.[16] This was sufficient notice that it was alleging both procedural misjoinder and improper joinder. The district court did not abuse its discretion in reviewing the notice of removal for improper joinder.

Although it was unusual for the district court to first rule on procedural misjoinder then substitute that finding with one based on

---

[13] *Williams*, 2021 WL 5577020, at *7.

[14] *Rachel v. Georgia*, 342 F.2d 336, 340 (5th Cir. 1965); *see also* FED. R. CIV. P. 8(e).

[15] *Rachel*, 342 F.2d at 340; *see Grynberg Production Corp. v. British Gas*, *P.L.C.*, 817 F. Supp. 1338, 1354 (E.D. Tex. 1993).

[16] No. 3:10-cv-01583-F, 2010 WL 11561744, at *2–3 (N.D. Tex. Nov. 5, 2010).

improper joinder, the district court did not err in doing so. It was Ticer who requested that the district court vacate its initial January 15, 2020 order. Upon receiving Ticer's motion, the district court did just that, noting that it had applied the procedural misjoinder standard and that the correct standard was improper joinder. Throughout these proceedings, Imperium remained in federal court, and the district court continued to have jurisdiction.[17] The district court did not abuse its discretion in reconsidering the issue of misjoinder after vacating its initial order.[18]

**B.**

Having determined that it was proper for the district court to consider improper joinder, we next consider whether the district court abused its discretion in holding a summary inquiry.

Improper joinder occurs when a plaintiff is unable "to establish a cause of action against the non-diverse party in state court."[19] The test is whether there is "no possibility of recovery by the plaintiff against an in-state defendant" or "no reasonable basis for [predicting recovery] against an in-state defendant."[20] To determine if there was improper joinder, the district court may conduct a Rule 12(b)(6)-type analysis, "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff

---

[17] *See Bronson v. Schulten*, 104 U.S. 410, 415 (1881).

[18] "Contrary to Plaintiff's protestations, the Court has properly had jurisdiction over all Plaintiff's claims ever since the Court vacated its earlier order. The Fifth Circuit recognized as much by dismissing Plaintiff's appeal for lack of jurisdiction."

[19] *Smallwood*, 385 F.3d at 572 (quoting *Travis*, 326 F.3d at 646–47).

[20] *Id.* at 573 (quoting *Travis*, 326 F.3d at 646–47).

can survive a Rule 12(b)(6) challenge, there is no improper joinder."[21] However, this is not the only way to establish improper joinder. The leading case in this circuit, *Smallwood*, "indicated that in a relatively small number of cases, the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[22] However, a summary inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."[23]

Here, the district court pierced the pleadings and examined Imperium's insurance policy, submitted by Imperium and Ironshore. As Ticer had not included the Imperium insurance policy in its pleadings, the district court was unable to consider the policy in a 12(b)(6) analysis. However, in a summary inquiry, the district court may consider additional evidence to determine whether the plaintiff "truly has a reasonable possibility of recovery in state court."[24] We have cautioned that "any piercing of the pleadings should not entail substantial hearings" and that any discovery by the parties should be kept on a "tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity."[25] Here, Ironshore and Imperium made the district court aware of the insurance policy. As the insurance policy is consistent with the types of evidence that courts have considered when conducting a summary inquiry, the district

---

[21] *Id.*

[22] *Hicks*, 12 F.4th at 515 (citing *Smallwood*, 385 F.3d at 573).

[23] *Smallwood*, 385 F.3d at 573–74.

[24] *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir. 2004).

[25] *Smallwood*, 985 F.3d at 574.

court did not abuse its discretion in deciding to pierce the pleadings and conduct a summary inquiry in order to analyze the relevance and meaning of the insurance policy.[26]

## C.

Having determined that holding a summary inquiry was not an abuse of discretion, we next review the district court's interpretation of the insurance policy. A summary inquiry by the district court must be a "summary process" decided "by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined."[27] Here the district court analyzed only the insurance policy at issue and properly concluded that Ticer could not establish any cause of action against Imperium in state court and denied the motion for remand.

Texas follows the eight corners rule in determining if an insurer has a duty to defend.[28] "Under that rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy."[29] The insured party has the initial burden to establish coverage under the policy; if

---

[26] *See Alviar v. Lillard*, 854 F.3d 286, 291 n.2 (5th Cir. 2017) (an email in which the plaintiff admitted to work-performance issues); *Kemp v. CTL Distribution*, 440 F. App'x. 240, 245 (5th Cir. 2011) (per curiam) (a passage from a CTL driver orientation manual); *see also Hicks,* 12 F.4th at 516 (holding that evidence developed during merits discovery is too far afield to consider).

[27] *Smallwood*, 385 F.3d at 574.

[28] *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).

[29] *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014).

it does so, the burden shifts to the insurer to prove that a policy exclusion applies.[30]

The interpretation of an insurance policy, in the absence of any ambiguity, is a question of law for the court to determine.[31] "Insurance policies are generally controlled by the rules of construction and interpretation applicable to contracts."[32] All parts of the policy are read together to ascertain the true intent of the parties.[33] Like other contracts, an insurance policy is unambiguous if it can be given a "definite or certain legal meaning."[34] If the policy, including any exclusion, is unambiguous it will be given its plain meaning.[35] A policy is not ambiguous just because the parties offer different interpretations of the contract; "[a] contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction."[36] However, if it is unambiguous, it "must be strictly construed in favor of the insured to avoid the exclusion."[37]

Here, the insurance policy included an Incident Exclusion which states that the "policy does not apply to any claim arising out of the facts and circumstances of the following incident: . . . Reed Migraine Centers of

---

[30] *Id.*

[31] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel*, LLC, 620 F.3d 558, 562 (5th Cir. 2010).

[32] *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858 (5th Cir. 2006).

[33] *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

[34] *WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 478 (5th Cir. 2016) (quoting *McLane Foodservice, Inc. v. Table Rock Restaurants*, L.L.C., 736 F.3d 375, 377 (5th Cir. 2013)).

[35] *McLane Foodservice*, 736 F.3d at 377.

[36] *Id.* at 377–78.

[37] *Lincoln Gen. Ins. Co.*, 468 F.3d at 859.

No. 21-10108

Texas." Ticer's arguments that this exclusion is ambiguous are spurious. There is no reasonable interpretation of the language in this policy exclusion that would provide coverage for Ticer's underlying suits with his clients.

Ticer is seeking defense and indemnity from Imperium for the Reed Parties' claims against it. It is undisputed that these claims arise out of Ticer's 2014 lawsuit against them to collect attorney's fees. Ticer acknowledged that the second lawsuit in 2018 for insurance coverage was related to the first suit with the "same or similar facts, matter, parties, claims, causes of action, issues, transactions and occurrences made the basis of the [2014] lawsuit."

Ticer's argument fails for three reasons. First, the Imperium policy's insuring agreement only covers "claims first made against the insured during the policy period." The 2014 suit against Ticer was made before the Imperium policy began in 2015. As Ticer has explained that the 2014 Reed suit is "directly related and connected to" the 2018 Reed suit for which he seeks defense and indemnity from Imperium, the 2018 allegations against him were not first made against him during the policy period.

Second, the Imperium policy's incident exclusion states that the policy does not apply to "any claim arising out of the facts or circumstances of the following incident: Reed Migraine Centers of Texas." Ticer argues that this exclusion is ambiguous because the "incident" referenced in the exclusion is an entity named "Reed Migraine Centers of Texas," while the parties who sued him in 2018 are Neuro Stim Technologies LLC and Reed Migraine Center of Texas, PLLC. However, the policy uses the word "incident" rather than "suit" or "parties"—nothing requires that all of the parties associated with an incident be listed for coverage to be precluded. Incident is not defined in the insurance policy, therefore we look to the word's plain meaning. "Incident" is defined by Merriam-Webster as "an

occurrence of an action or situation that is a separate unit of experience" or a "happening."[38] The incident, or happening, is broader than any one suit; the incident is the underlying fee dispute between the Reed parties and Ticer.

Finally, the Imperium policy states that it does not apply to "any claim arising out of any wrongful act occurring prior to the effective date of this policy if: 1. the matter had previously been reported to any insurance company." Ticer's 2015 application for insurance noted that a claim brought by Dr. Kenneth Reed, Neuro-Stim Technologies and Reed Migraine Centers of TX PLLC in September 2014 was pending. In light of Ticer's admissions that the 2014 and 2018 actions by the Reed Parties are the same, the incident exclusion applies to the 2018 lawsuit. Furthermore, Ticer has provided no evidence that there is a different Imperium insurance policy that the court should be considering.

The Imperium policy is unambiguous: the policy does not provide coverage for suits arising from the underlying fee dispute with the Reed parties. Therefore, Ticer has no plausible claim against Imperium for a failure to defend and indemnify it in the second Reed lawsuit. Where there is no plausible state cause of action against the joined defendant, joinder is improper.[39] The district court was correct to hold that Imperium was improperly joined and to deny Ticer's motion for remand.

---

[38] "Incident," *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/incident (last visited Nov. 18, 2021).

[39] *McDonal*, 408 F.3d at 183 ("If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent."); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005) ("We do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so."); *Smallwood*, 385 F.3d at 573.

No. 21-10108

## IV.

"In considering whether a nondiverse party was improperly joined under *Smallwood*, the court is only considering jurisdiction."[40] After holding that Imperium had been improperly joined, the district court dismissed Ticer's claims against Imperium with prejudice. When a district court "determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice."[41] Thus, the dismissal of Ticer's claims against Imperium should have been without prejudice.

## V.

We AFFIRM the district court's determination that Imperium was improperly joined and its denial of the motion for remand. We VACATE the district court's dismissal with prejudice and REMAND for dismissal without prejudice.

---

[40] *Int'l Energy Ventures*, 818 F.3d at 210 ("[T]he Smallwood inquiry—including its Rule 12(b)(6)-type analysis—is used to resolve the issue of jurisdiction, not merits."); *United States v. Ruiz*, 536 U.S. 622, 627 (2005).

[41] *Probasco v. Wal-Mart Stores Texas, L.L.C.*, 766 F. App'x. 34, 36 (5th Cir. 2019), *reh'g. denied* (Apr. 24, 2019) (quoting *Int' Energy Ventures*, 818 F.3d at 209) (emphasis in the original).