# United States Court of Appeals
# for the Fifth Circuit

No. 24-60090

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2025

Lyle W. Cayce
Clerk

Maria Wilson,

*Plaintiff—Appellant*,

*versus*

Kemper Corporate Services, Incorporated; Union National Fire Insurance Company; Robin Wilson; Angela Washington; John Doe Entities 1-5; John Doe Persons 1-5,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:22-CV-62

_____

Before Elrod, *Chief Judge*, and Dennis and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

This dispute arises from an insurer's refusal of a policyholder's claim for coverage. After the insurer prevailed at arbitration and the district court confirmed its arbitral award, the policyholder, Plaintiff-Appellant Maria Wilson, appealed, raising four issues: (1) whether the district court erred by denying her motion to remand to state court; (2) whether the district court erred by granting Defendants-Appellees' motion to compel arbitration; (3)

whether the district court erred by denying her motion to reconsider its order compelling arbitration; and (4) whether the district court erred by confirming Defendants-Appellees' arbitration award instead of granting her motion to vacate.

We hold that the district court erroneously denied Plaintiff-Appellant Maria Wilson's motion to remand. Contrary to the district court's holding, non-diverse Defendant-Appellee Robin Wilson is properly joined. We therefore REVERSE the district court's denial of Maria Wilson's motion to remand and VACATE the district court's order compelling arbitration and the amended final judgment, including confirmation of Defendants-Appellees' arbitral award. We REMAND to the district court with instructions to remand this case to state court.

I

A

On August 27, 2018, Defendant-Appellee Union National Fire Insurance Company ("UNFIC") issued an insurance policy ("Policy") to Plaintiff-Appellant Maria Wilson ("Maria Wilson"). The Policy covers "personal property" located at "2170A Tillman Chapel Road," a residential address in Pattison, Mississippi. Both a house and a travel trailer share that address.

UNFIC insurance agent Defendant-Appellee Robin Wilson ("Robin Wilson") sold the Policy to Maria Wilson. During the transaction, Robin Wilson described the Policy in general terms but never read its text aloud from start to finish. Because Maria Wilson is illiterate, she did not—and could not—read the Policy. Nevertheless, Maria Wilson decided to apply for coverage, so Robin Wilson completed the application form and Maria Wilson added her signature. After receiving a final version of the Policy several

weeks later, Maria Wilson brought coverage into effect by paying the recurring premiums.

The parties dispute certain representations made during the transaction. Maria Wilson alleges that she told Robin Wilson that she "may be living in the adjoining trailer within the property located at 2170A Tillman Chapel Road. . . [,]" rather than the house, which belonged to her mother. According to Maria Wilson, Robin Wilson guaranteed that the Policy would still cover her personal property inside of the house. But Robin Wilson, for her part, denies ever telling Maria Wilson that her personal property would be covered regardless of whether she lived in the house or the travel trailer. Instead, Robin Wilson attests that she only issued the Policy after Maria Wilson said that she planned to "move" from the travel trailer to the house within several weeks.

On April 1, 2019, a fire destroyed the house located at 2170A Tillman Chapel Road and, with it, Maria Wilson's personal property. Shortly after, Maria Wilson sought coverage under the Policy by filing an insurance claim with UNFIC. While investigating the claim, Robin Wilson allegedly discovered that Maria Wilson never lived in the house. UNFIC's parent company—Defendant-Appellee Kemper Corporate Services ("Kemper")—reached the same conclusion. According to a Kemper employee who interviewed Maria Wilson during the investigation, Maria Wilson acknowledged that she lived in the travel trailer all along.

The investigation ended on August 31, 2019, when Kemper-UNFIC concluded that Maria Wilson did not live in the house—a purported requirement for coverage. Citing "a change in ownership or occupancy" of the property, Kemper-UNFIC cancelled the Policy without paying Maria Wilson.

B

Maria Wilson filed suit in the Circuit Court of Claiborne County, Mississippi, on April 1, 2022. In addition to UNFIC, Kemper, and Robin Wilson, Maria Wilson named UNFIC supervisor Angela Washington ("Washington") as a defendant. For jurisdictional purposes, UNFIC is a citizen of Louisiana; Kemper is a citizen of Illinois; and Maria Wilson, Robin Wilson, and Washington are all citizens of Mississippi.

Maria Wilson alleged eight claims in total: (1) breach of contract; (2) tortious breach of contract; (3) breach of the duty of good faith and fair dealing; (4) negligence as to Robin Wilson; (5) negligence as to Washington; (6) negligence and gross negligence as to UNFIC and Kemper; (7) fraud as to Robin Wilson; and finally (8) bad faith.

Defendants-Appellees removed the case to federal court on the basis of diversity jurisdiction. According to Defendants-Appellees, Robin Wilson and Washington—the non-diverse defendants—were improperly joined because Mississippi law bars the fraud and negligence claims asserted against them. The district court agreed. Denying Maria Wilson's motion to remand, the district court reasoned that Maria Wilson could not state a fraud claim against Robin Wilson because "[a]ny claimed reliance by [Maria Wilson] upon an alleged representation that her coverage extended beyond the terms of the insurance contract was unreasonable as a matter of law." Turning to the negligence claims, the district court held that Maria Wilson "had a duty to read her insurance policy," and, "[b]ecause a reading of the policy would have prevented any misapprehensions stemming from any potentially negligent misrepresentations or failures to explain the policy, [Maria Wilson's] claims against Defendants [Robin Wilson] and Washington fail as a matter of law."

No. 24-60090

The dispute did not remain in federal court. Over Maria Wilson's opposition, the district court granted Defendants-Appellees' motion to compel arbitration, holding that Maria Wilson accepted the Policy in its entirety, including an arbitration agreement therein, when she effectuated coverage by paying the monthly premiums. After finding the arbitration agreement valid as a matter of contract law, the district court ruled that Maria Wilson's claims "fit squarely into [its] enumerated categories," which encompass disputes related to the "denial of claims," "agent conduct," and "any other matter arising out of or relating in any way to this [P]olicy or [Maria Wilson's] relationship with [Kemper-UNFIC and] its agents. . . .'"

Defendants-Appellees prevailed at arbitration, where the arbitrator granted judgment on the pleadings, finding that Maria Wilson waived her claims by failing to demand arbitration within the Policy's three-year limitations period. With a favorable arbitration award in hand, Defendants-Appellees returned to the district court, which confirmed the award pursuant to Section 9 of the Federal Arbitration Act ("FAA") and denied Maria Wilson's motion to vacate. Maria Wilson timely appealed.

II

Maria Wilson raises four issues on appeal: (1) whether the district court erred by denying her motion to remand to state court; (2) whether the district court erred by granting Defendants-Appellees' motion to compel arbitration; (3) whether the district court erred by denying her motion to reconsider the order compelling arbitration; and (4) whether the district court erred by confirming Defendants-Appellees' arbitration award instead of granting her motion to vacate.

A

We begin with the district court's denial of Maria Wilson's motion to remand and review this question of subject matter jurisdiction de novo. *See*

5

*Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009). "'The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.'" *Id.* at 171 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006)). The district court asserted diversity jurisdiction pursuant to § 1332, concluding that Maria Wilson improperly joined non-diverse defendants Robin Wilson and Washington in a dispute involving an amount in controversy greater than $75,000.

"In this circuit, a non-diverse defendant is improperly joined such that its citizenship can be ignored for purposes of evaluating diversity jurisdiction if the removing party shows either that: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court." *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 812 (5th Cir. 2021). As to the latter basis for improper joinder, the inquiry is "whether the plaintiff had any possibility of recovery against the non-diverse defendant in state court at the time of removal." *Id.* This is "virtually identical to the inquiry on a motion to dismiss for failure to state a claim. . . ." *Id.* In other words, "if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

The district court, concluding that Maria Wilson could not establish a fraud claim against Robin Wilson or a negligence claim against either Robin Wilson or Washington, held that Robin Wilson and Washington were improperly joined. It therefore ignored their citizenship, held that diversity jurisdiction was proper as between the remaining parties, and denied Maria Wilson's motion to remand.

As a threshold matter, Maria Wilson contends that the district court erred by looking beyond her complaint to determine that joinder was improper. True, the district court's analysis turned on Maria Wilson's

subsequently filed affidavit, where she admits that she never read the Policy because she is illiterate. But consideration of Maria Wilson's affidavit was not error. In "limited circumstances," when it "appears that the plaintiff has misstated or omitted discrete facts that would determine the propriety of joinder," the district court may pierce the pleadings and perform "a more detailed factual analysis." *Williams*, 18 F.4th at 812–13. This kind of "summary inquiry 'is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant.'" *Flagg v. Stryker Corp.*, 819 F.3d 132, 136–37 (5th Cir. 2016) (en banc) (alteration in original) (quoting *Smallwood*, 385 F.3d at 573–74). In her affidavit, Maria Wilson admits that she did not read the Policy. And this discrete, undisputed fact bears on "the chances of [her] claim against the in-state defendant alleged to be improperly joined." *Smallwood*, 385 F.3d at 574. Under Mississippi law, which governs this dispute, the "duty to read" doctrine imputes knowledge of an insurance policy to the insured and, in certain circumstances, bars negligence claims against insurance agents like Robin Wilson. *See Est. of Greenwood v. Montpelier US Ins. Co.*, 326 So. 3d 459, 464 (Miss. 2021) (explaining that "an [insurance] agent cannot be held liable for misrepresentations that could be cured by reading the policy"). Because Maria Wilson's failure to read the policy could reasonably affect the success of her negligence claim against Robin Wilson, the district court did not abuse its discretion by considering the affidavit in its analysis of joinder. *See Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1047 (5th Cir. 2021) (stating that piercing the pleadings and conducting a summary inquiry is reviewed for abuse of discretion in the context of improper joinder).

B

We now assess the propriety of joinder, beginning with Maria Wilson's negligence claim against Robin Wilson.

No. 24-60090

Under Mississippi law, "[t]he elements of a negligence claim are duty, breach of duty, proximate cause, and damages." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1162 (Miss. 2010). Mississippi law instructs that insurance agents do not "have an affirmative duty to advise buyers regarding their coverage needs." *Id.* at 1163. However, "if agents do offer advice to insureds, they have a duty to exercise reasonable care in doing so." *Id.* But as discussed, an agent's duty to exercise reasonable care is narrowed by Mississippi's duty to read doctrine, which "impute[s] [insureds] with knowledge of the contents of their insurance policy, whether or not they have read the policy."[1] *Id.* at 1168. The upshot, then, is that insurance agents are not "liable for misrepresentations that could be cured by reading the policy"—only those that "*cannot* be cured" by its terms. *Est. of Greenwood*, 326 So. 3d at 464 (emphasis added).

C

As alleged, Robin Wilson told Maria Wilson that her personal property inside of the house would be covered by the Policy even if she lived in the travel trailer instead. We now ask whether the Policy corrects this purportedly negligent misrepresentation. If it does, Mississippi's duty to read doctrine bars Maria Wilson's negligence claim.

The interpretation of an insurance policy is a question of law that we review de novo. *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 658 (5th Cir. 2022) (per curiam). "An insurance policy is a contract, and consequently must be interpreted based on the meaning of the language used." *VT*

---

[1] Mississippi courts have not held that illiterate insureds are exempt from the duty to read. *Cf. Washington Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) ("The Mississippi Supreme Court has held that, as a matter of law, an individual's inability to understand a contract because of his or her illiteracy is not a sufficient basis for concluding that a contract is unenforceable." (citing *Mixon v. Sovereign Camp, W.O.W.*, 125 So. 413, 415 (Miss. 1930))).

*Halter Marine, Inc. v. Certain Underwriters of Lloyd's of London*, 386 So. 3d 722, 724 (Miss. 2024). To discern the meaning of an insurance policy, we "look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). That said, "[a]mbiguous or unclear language is resolved in favor of the insured. . . ." *VT Halter Marine, Inc.*, 386 So. 3d at 724. And just as importantly, "limitations or exclusions on coverage must be construed in favor of the insured and against the insurer." *Omega Protein, Inc. v. Evanston Ins. Co.*, 336 So. 3d 128, 131 (Miss. 2022).

D

Without comprehensively analyzing the text of the Policy, the district court held that Maria Wilson's negligence claim against Robin Wilson fails as a matter of Mississippi law because "a reading of the policy would have prevented any misapprehensions stemming from any potentially negligent misrepresentations or failures to explain the policy." Because the duty to read does not bar Maria Wilson's negligence claim, we hold that joinder of Robin Wilson is proper.

To start, the Policy "cover[s] personal property usual to the occupancy of a dwelling that is owned or *used* by [Maria Wilson] or any covered person while it is on the described location." (emphasis added). Maria Wilson stored her personal property in the house and, as such, "used" that "dwelling." The question, then, is twofold: is the house located "on the described location" and, moreover, does the term "described location" include a residency requirement?

Under the Policy, "'[d]escribed [l]ocation' means the dwelling, other structures, and grounds, or that part of a building where [Maria Wilson] live[s] that is located at the address shown on the [d]eclarations [p]age"—

2170A Tillman Chapel Road. Because the house at issue is a "dwelling" that is "located at the address shown on the [d]eclarations [p]age[,]" the Policy would appear to cover Maria Wilson's personal property therein.

Defendants-Appellees disagree, contending that the phrase "[] or that part of a building where [Maria Wilson] live[s]" modifies the entire list, thereby requiring Maria Wilson to actually live in the "dwelling." But Defendants-Appellees' interpretation is hard to square with the word "or[,]" which operates disjunctively. Moreover, the comma that precedes "or" further separates the final clause containing the residency requirement from the list's prior, distinct components. At the very least, Defendants-Appellees' interpretation of this exclusionary clause is not "clear and unmistakable," which it "must be" in order to override the "strict" presumption in favor of insureds such as Maria Wilson. *Corban v. United Servs. Auto. Ass'n*, 20 So.3d 601, 615 (Miss. 2009) (internal quotation marks and citation omitted).

To the extent Defendants-Appellees' interpretation is, at first blush, tenable, it's undercut by the Policy's separate definition of the term "described location." Specifically, the Policy's "declarations page" reads: "[d]escribed [l]ocation: The premises or property covered by this [P]olicy is located at the address listed below"—2170A Tillman Chapel Road. Assuming, *arguendo*, that Defendants-Appellees correctly identify a residency requirement, Maria Wilson could plausibly believe that she is "covered by this [P]olicy" because she lives in a travel trailer on the "premises" of 2170A Tillman Chapel Road.

Defendants-Appellees' interpretation is further undermined by an unreasonable outcome. The Policy distinguishes covered personal property from that which is excluded. For instance, it "do[es] not provide coverage" for "[b]oats, *other than* rowboats and canoes[.]" (emphasis added). Nor does the Policy cover "[m]otor vehicles, *other than* non-licensed motorized

equipment used to service the described location[.]" (emphasis added). So, even though the Policy protects rowboats, canoes, and non-licensed motorized equipment, Defendants-Appellees' logic dictates that such possessions only receive coverage if the insured stores them inside of a house. This position makes sense if the Policy only protects "dwelling[s]." However, the term "described location" also encompasses "other structures, and grounds . . . ." Nevertheless, as Defendants-Appellees read the Policy, storing a covered possession, such as a lawnmower, in a separate "structure[]" on the premises, like a shed, is impermissible *unless* the insured lives there. Such an unreasonable requirement counsels against Defendants-Appellees' cramped interpretation. *See Frazier v. N. Miss. Shopping Ctr., Inc.*, 458 So. 2d 1051, 1054 (Miss. 1984) ("A construction leading to an absurd, harsh or unreasonable result in a contract should be avoided, unless the terms are express and free of doubt.").

Defendants-Appellees argue that Maria Wilson's separate insurance application clarifies the Policy's narrow residency requirement. As Defendants-Appellees correctly observe, Maria Wilson's application describes the construction type of the structure containing her personal property as "Frame Contents." Likewise, the Policy lists the construction type of the insured structure as "Frame." According to Defendants-Appellees, these details, taken together, demonstrate that "[Maria] Wilson had actual and imputed knowledge that she needed to live in the single-family house at the described location—not the trailer or mobile home—to receive the Policy's coverage." We disagree. Though both facts indicate that Maria Wilson intended to insure the house, they in no way suggest—let alone confirm—that the Policy required Maria Wilson to live in the house specifically or, along similar lines, that living in a travel trailer stationed at the named address would void coverage.

All in all, we find that the Policy does not "clear[ly] and unmistak-abl[y]" convey that Maria Wilson must live in the house, not a travel trailer at the same address, in order to receive coverage. *Corban*, 20 So.3d at 615 (internal quotation marks and citation omitted). This lack of clarity favors Maria Wilson three times over. First, "[a]mbiguous or unclear language is resolved in favor of the insured." *VT Halter Marine*, 386 So 3d at 724. Second, "limitations or exclusions on coverage must be construed in favor of the insured and against the insurer." *Omega Protein, Inc.*, 336 So 3d at 131. And finally, "[a]s the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns. The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 301 (5th Cir. 2024) (quoting *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007)).

In light of these presumptions, we hold that Mississippi's duty to read doctrine does not bar Maria Wilson's negligence claim against Robin Wilson. Nothing in the Policy unambiguously corrects Robin Wilson's alleged mis-representation—namely, that Maria Wilson's personal property inside of the house would be covered even if she lived in a travel trailer located at the same address. Joinder of non-diverse Defendant-Appellant Robin Wilson is therefore proper, meaning that the district court lacks subject-matter jurisdiction to consider this case. Consequently, the district court erred in denying Maria Wilson's motion to remand.

\* \* \*

No. 24-60090

For the foregoing reasons, we REVERSE the district court's order denying Maria Wilson's motion to remand to state court because joinder of non-diverse Defendant-Appellant Robin Wilson is proper.[2]

III

Maria Wilson also appeals the district court's order compelling arbitration and the amended final judgment, which confirmed Defendants-Appellees' arbitral award. "[W]e have made clear that a district court must have subject matter jurisdiction over the underlying dispute in order to compel arbitration under [the FAA]." *Lower Colo. River Auth. v. Papalote Creek II, LLC*, 858 F.3d 916, 927 (5th Cir. 2017). Here, the district court lacked subject matter jurisdiction from the start. This, in turn, vitiates its order compelling arbitration, the arbitration itself, and its confirmation of Defendants-Appellees' arbitral award.[3] *See id.* at 926–27 (vacating fully-arbitrated dispute where district court could not properly compel arbitration because it

---

[2] Because Robin Wilson is properly joined and diversity jurisdiction is therefore absent, we need not consider whether Mississippi law precludes Maria Wilson's fraud claim against Robin Wilson or whether Washington, the other non-diverse Defendant-Appellee, is properly joined as well.

[3] In *Papalote Creek II, LLC*, we held that the district court erroneously compelled arbitration because the underlying dispute was unripe. 858 F.3d at 923–24. Although subject matter jurisdiction lacked when the district court compelled arbitration, the dispute ripened by the time we heard the appeal. *Id.* at 926. But despite the fact that "the parties ha[d] already fully arbitrated the underlying dispute once while this appeal was pending," our assertion of subject matter jurisdiction could not "retroactively cure the void order compelling [appellant] to an arbitration that it should not have been forced to attend at the time." *Id.* at 927. Acknowledging that "a new arbitration could conceivably result in a different outcome[,]" we instructed the district court to either "consider anew the petition to compel arbitration or conduct other proceedings." *Id.* In other words, we did not—and could not—"resurrect" the prior arbitration or the resultant award. *Id.* Here, *Papalote Creek II, LLC*'s rationale applies with even greater force given that we *still* lack subject matter jurisdiction over this dispute. Thus, Defendants-Appellees' arbitral award cannot be reconfirmed.

No. 24-60090

lacked subject matter jurisdiction at the outset).  We therefore VACATE the district's order compelling arbitration and, separately, the amended final judgment.

* * *

In sum, we REVERSE the district court's denial of Maria Wilson's motion to remand and VACATE the district court's order compelling arbitration and the amended final judgment, including confirmation of Defendants-Appellees' arbitral award.  We REMAND to the district court with instructions to remand this case to state court.